S. Samuel Di Falco, S.
In this proceeding by the executor of the deceased executrix to settle her final account herein, the court is asked to construe the will and determine (1) whether or not the power to invade principal of the residuary trust as provided in paragraph Third thereof passes to a successor trustee and (2) whether the oil and gas royalties received from the trust property should solely constitute income or whether 27%% or some other percentage thereof should be allocated to principal.
With respect to the first question, the parties appear to be in agreement, and the court holds, that the power of invasion passes to the successor trustee. (Matter of Fox, 292 N. Y. 19.)
The main question to be decided, therefore, is the apportionment of the aforesaid royalties. The income beneficiary contends that they should go entirely to income, and petitioner who is the remainderman contends that 27%% should be allocated to principal.
Under paragraph Third of the will, testator gave his residuary estate in trust to pay the income to his adopted daughter for life, with power to invade principal for her support and maintenance, and upon her death devised and bequeathed the remainder to her issue, or if there be none, then to his sister or if she be deceased, to his nephew. Under present circumstances, the last named is the presumptive remainderman. Under paragraph Fourth he gave his executors and trustees power of sale over any real estate and provided: “ I give them power to pay over the income without allowance for amortization of premiums paid for the purchase of securities, or for the depreciation in value of the property, and I direct that they shall be the sole judges as to whether the extra or special dividends or rights to subscription of stock shall be considered principal or income, so long as they do not cause an unlawful accumulation of income. ’ ’
The sole asset of the trust is a fractional interest in unimproved real property in Texas which, at the time of testator’s death was merely used as grazing land with a return barely sufficient to pay taxes. Its then value is reflected in the account at less than $200. It was subsequently enhanced by the “ gift ” of an equal fractional interest from testator’s sisters. Some four years after his death oil and gas was discovered and the total royalties received exceed $69,000 and have been allocated, as shown in the account, 27%% to principal and 72%% to income. Future royalties will amount to over $44,000 and will be similarly allocated. The principal value of the trust is stated to be about $31,500. .
*472 Petitioner contends that the law of the situs of the property, namely Texas, regulates the allocation of the royalties and while not directly questioning this, the income beneficiary cites New York authorities relating to so-called “ wasting ” assets, citing Matter of Beeler (203 Misc. 100) where the court stated at page 101: “ Such assets [royalty interests] are recognized as ‘ wasting assets ’ and in the absence of a contrary testamentary intention, apportionment between principal and income of receipts therefrom, at least until trust principal has been recouped, is proper. (Restatement, Trusts, § 239, comment g; Matter of Hopkins, 171 Misc. 910; Matter of Bruen, 83 N. Y. S. 2d 197.) ”
The rule is well expressed by the Court of Appeals in Guaranty Trust Co. v. Halstead (245 N. Y. 447) at page 464: “ The testamentary trustee urges that, in order to maintain a proper balance between the four sets of beneficiaries, as well as between the first taker and the remaindermen of any one set, sufficient sums should be reserved from surplus income to make good the annual loss in value of the right to such income, regarded as a capital asset. Where an asset of an estate is of a wasting character, an asset ‘ which may be consumed in the using, ’ such a method of amortization, in the absence of a testator’s direction to the contrary, is ordinarily employed. (Howe v. Earl of Dartmouth, 7 Vesey’s Ch. Rep. 137; Cairns v. Chaubert, 9 Paige Ch. 160; Matter of Elsner, 210 App. Div. 575.) Doubtless no illegal accumulation results, since the apparent income is used not to increase but to preserve the capital fund, and since, moreover, the apparent income, to the extent that its disbursement may impair capital, in itself partakes of the nature of principal.”
In making the principal whole, however, the income beneficiary selects the inventory value of the property as a basis for recoupment, whereas the remainderman presents the value as enhanced by the presence of oil and gas. It would appear to the court more equitable to recognize the fact that the true value of the property although not ascertained until some years after testator’s death, nevertheless actually existed at the time.
There is no question that the law of the situs of the real property governs determination of the proper allocation. (Matter of Good, 304 N. Y. 110; Matter of Haldeman, 208 Misc. 419.)
Matter of Haldeman (supra) on its facts was very similar to the instant case. There the corpus of trusts created by testatrix, a New York resident, consisted of unproductive real property in Texas and royalty rights from oil and gas leases of that land. The will directed payment of the net income to the beneficiaries with remainder to their children but did not expressly *473 mention the leases nor did it contain any explicit direction for treatment of the royalties. Petitioner asked the court to determine whether the income beneficiaries were entitled to all of the royalties or whether they werfe required to be apportioned between principal and income. The court held that in the absence of any indication of actual intent, the trustees under the rule prevailing in this State were obliged to administer the assets in such a way as to protect the interests of both principal and income beneficiaries.
Here the income beneficiary urges that the words “ I give them power to pay over the income without allowance for amortization of premiums paid for the purchase of securities, or for the depreciation in value of the property “in paragraph Fourth of the will, indicates the intent of testator to pay all income to her, but the court holds otherwise. The language must be read in context and the entire paragraph could not be deemed to refer to royalties of which testator was unaware. Power to invade principal of the supposedly unproductive property for her support and maintenance given in paragraph Third of the wiU would have little meaning if in the ultimate event, all royalties were to be paid to her.
In Matter of Haldeman (supra) the court at page 423 made reference to the Texas statutes and to Matter of Beeler (supra):
“ The law of Texas in respect of the apportionment of the receipts of oil and gas leases is set forth in the Trust Act (20 Vernon’s Civil Statutes of Texas, art. 7425b-33). Where any part of the principal of the trust consists of an interest in land, including royalties from oil or gas leases, the royalties are to be apportioned 27%% of the gross proceeds to principal (but not to exceed 50% of the net proceeds) and the balance to income. The provisions of the statute do not apply where the trust instrument contains provisions for apportionment of the income and principal (Hardwicke, Problems Arising out of Royalty Clauses in Oil and Gas Leases in Texas, 29 Tex. L. Rev. 790, 802).
“ A determination whether New York or Texas law is determinative, is of no practical consequence at this time. In both States, apportionment is required unless the creator of the trust prescribes otherwise. The Texas rule of apportionment is the same as the rule accepted in the tax field (1955 Federal Tax Regulations, § 39.23 [m]-4). In New York, there is no fixed formula. Any method reasonably adapted toward preserving the value of principal unimpaired may be used (Restatement, Trusts, § 239, Comment g). The method of apportionment applied in Matter of Beeler (203 Misc. 100) was in general, the same as *474 that set forth in the Texas Act and in the Federal Tax Regulations. If the parties cannot agree among themselves upon a method of preserving unimpaired the rights of all parties, the court will determine the method of apportionment.”
It was to remedy the inequities of the so-called Open Mine Rule which, under varying circumstances work to the detriment either of a life beneficiary or a remainderman, that the Texas Trust Act, above cited, was enacted.
The court determines that the method of apportionment of royalties adopted by petitioner as set forth in the account is proper.
Objections having been filed, the court will set same for hearing on the 9th day of December, 1959, at 2:30 p.m. After determination of the issues thereby presented, a decree may be submitted, on notice, construing the will accordingly.