Vincent A. Lupiano, J.
The successor trustee, the resigning trustee (petitioner herein), the surviving cosettlor (prime income beneficiary) and the adult vested and contingent remaindermen in fact, ask, in total effect, the court to approve the resignation of the petitioner (Chemical Corn Exchange Bank) as trustee; approve the appointment of the successor trustee (Equitable Trust Company, Baltimore, Maryland); approve the transfer of the trust assets by the resigning trustee to the successor trustee for administration in the State of Maryland and in accordance with the laws of that State and that the resigning trustee be directed to supplement its present account to the date of entry of the intermediate order possible herein. There is opposition: the special guardian objects to the removal of the trust situs from the State of New York to Maryland as contrary to the intentions of the settlors, which, of course, must be determined from the trust indenture itself.
The trust indenture was executed in the State of Maryland in 1930, between Maryland settlors and a New York bank (petitioner) and an individual resident of Pennsylvania as cotrustees. Upon the death of the cotrustee, in 1931, the petitioner continued the administration of the trust as the sole surviving trustee. In 1953 a cosettlor died.
The prime life beneficiary (cosettlor) presently resides in Maryland; all of the adult and infant vested and contingent remaindermen reside in the State of Maryland except one adult remainderman who resides in New York, and who assents herein.
The salient parts of the indenture: Article Seventh thereof provides, in part, that ‘ ‘ All questions pertaining to the validity and construction of the trusts herein created shall be determined in accordance with the laws of the State of Maryland
The trust further provides, in Article Fifth: “ Any trustee may resign at any time upon sixty days’ written notice * * * ” and further “ Upon death, disqualification or resig *908 nation of the individual trustee, the corporate trustee shall continue to administer the trust established hereby; as sole trustee. Upon resignation or disqualification of the corporate trustee herein, any trust company or bank having a trust department of good standing may be appointed by an instrument in writing, acknowledged as a deed, by Frederick R. Smart, (deceased) above named, if then living, or if he be then dead, by the individual trustee, or if there be no individual trustee, by the corporate trustee then resigning or disqualified. Such successor trustee, upon written acceptance of such appointment, acknowledged as a deed, shall forthwith succeed to all of the property rights, powers and authority of the resigning trustee, and such resigning trustee shall, upon request, promptly execute and deliver all instruments and perform all acts necessary or proper to effectuate the transfer of the trust estate and said resigning trustee’s rights therein.” (Italics mine.)
Article Second further provides, in part, that “ the beneficiary for whom such share shall be retained, may dispose by his or her valid last will and testament of the principal of such share remaining in the hands of the trustees at the time of his or her death, and if such beneficiary shall die intestate, the principal of such share shall be distributable to his or her next of kin according to the Laws of the State of Maryland. ’ ’
Article Third declares that “ this deed is made with the intent that no person having an interest in the trust estate shall be entitled to have said estate administered under the supervision of any court of equity, or to apply to any court to assume jurisdiction thereof.” (Italics mine.)
Article Eighth, inter alia, states “ Corn Exchange Bank Trust Company shall be entitled to receive trustee’s commissions at the rate receivable by it as a testamentary trustee in the State of New York.”
The special guardian for the infant remaindermen, objecting to the petitioner’s application, relies on Matter of Flexner (7 Misc 2d 621) and Matter of Chase Nat. Bank (Stillwell) (102 N. Y. S. 2d 124) setting forth arguments which essentially raise a question, not of jurisdiction or power, but of intention of the settlors at the execution of the trust.
The facts before Mr. Justice McGtvebn in the Flexner case {supra) essentially differ from those herein. There, the trust indenture was executed in New York between a New York settlor and a New York trustee and explicitly provided that it was to be governed by New York law; no power of revocation or amendment was reserved. The settlor, also the life beneficiary, moved to California. Some remaindermen lived in Cali *909 fornia, others in New York; thereafter, the trustee died and the successor trustee, a New York resident, named in the indenture, qualified so as to provide interim administration. He and the settlor then requested the court to appoint a California bank in his stead.
Saliently, there was no provision in the latter indenture for the appointment of a successor trustee, and it was concluded, in the prevailing circumstances, that the settlor intended to create an irrevocable New York trust, whereupon the court denied •the appointment and appointed a New York trustee pursuant to section 20 of the Personal Property Law and in accordance with subdivision 3 of section 131 of the Banking Law.
The Chase Nat. Bank case (supra) is also distinguishable from the matter at hand. There, the indenture was executed in New York, between a New York settlor and a New York trustee. The trust agreement (par. 12 of the indenture), its validity and effect, were to be regulated by New York law and the trustee was to account only in the New York courts. Thereunder the income beneficiary had power to appoint the remainder of the trust which she exercised in her will appointing a New Jersey bank as cotrustee to administer her own personal estate, as well as the remainder of the inter vivos trust. The court said (p. 129) that the donee of a power was the mere agent of the donor and that the clear intention of the donor as gathered from the indenture was to give “the New York Supreme Court * * * exclusive jurisdiction over * * * the inter vivos trust.” The application for transfer was accordingly denied.
The petitioner herein, on the other hand, relies on Matter of Matthiessen (195 Misc. 598). There, a New York settlor appointed a New York individual and a New York trust company as cotrustees. The indenture provided for the appointment of a successor trustee but did not explicitly provide that New York law was to govern the administration of the trust. In preliminary purpose, the fact that the indenture provided for the application of the laws of intestacy of New York; that compensation of the trustee was to be granted pursuant to the New York Surrogate’s Court Act; that the settlor at the time of execution of the trust was a New York resident, that a New York trustee was named, all these were taken as sufficient expression of intention to subject the trust to the laws of New York. This initial phase of the ease resolved, the question of whether the situs of the trust could still be transferred and administered in a foreign State, consonant with our public policy, was still an open one. Putting it differently, was juris *910 diction exclusively bestowed upon the State of New York? The court explored further and found that the agreement did not expressly confine the administration of the trust in New York or that the successor trustee be a domestic bank or trust company ; that power was given to the life beneficiary, a resident of California, to appoint a successor trustee under the agreement, as long as it was a bank or trust company. In logical sequence, all of these factors created adequate rational basis and sufficiently indicated the settlor’s intention (such as in the instant case) not to confine the administration of the trust exclusively to New York. Lastly, there was a public policy concern which could prove disabling. In that final aspect, the court found that subdivision 3 of section 131 of the Banking Law, which prohibits a bank or trust company of another State to be a fiduciary in this State, except when such State has an enabling reciprocal statute, did not prohibit the transfer of the trust situs (even though California had no reciprocal enabling statute), since the successor trustee did not intend to act as trustee in this State. Under such circumstances the Banking Law was not contravened.
All the more, there is a reciprocal statute here, and the designated successor trustee does not intend to act as trustee in New York.
Ultimately, I am sufficiently convinced that the settlors did not intend to grant exclusive jurisdiction to New York. Articles Second and Seventh explicitly provide that validity and construction of the trusts, and intestacy distributive eventualities shall be determined by the laws of the State of Maryland. These provisions, combined with the right of appointment of any trust company or bank as successor trustee (art. Third), makes an argument, based on intention, a convincing and valid one, particularly in the aura of its place of execution and the citizenship of the settlors: Maryland.
In the light of these expressions, I find that Article Eighth of the agreement was intended solely as a yardstick of payment for the benefit of the resigning trustee. This clause does not change the course of the expressed and implied intention of the settlors as defined herein. As above noted, no statute or public policy is offended, therefore the course is open for transfer of the trust situs.
The petitioner’s application is granted. Settle interim order accordingly.